IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO: 2:06-cr-173-MHT |
| | ) | |
| TANESHIA M. LAWSON | ) | |

**DEFENDANT TANESHIA M. LAWSON'S NOTICE OF OPPOSITION TO PROPOSED 404(b) EVIDENCE AND MOTION IN LIMINE WITH CITATIONS OF AUTHORITY**

Comes now the Defendant, Taneshia M. Lawson, by counsel and pursuant to F.R.E. 402, 403 and 404(b), and respectfully moves this Court to prohibit the Government from introducing, in any opening statement, argument, evidence, opinion, exhibit, photograph, video, or testimony, any allegations concerning the subject of the below-described items.

In the alternative, Defendant requests a continuance to investigate these matters and asks that this Court require the Government to notify the Court of its intent to introduce such item before such introduction; that the Court rule on the admissibility of such item prior to it being presented before the jury; and that the Court provide appropriate limiting instructions at the time of the admission of such evidence and in closing instructions.

On Friday, November 3, 2006, at 1:41 p.m., the Government filed a document styled "United States' Proffer of and Notice of Intent to Use 404(b) Evidence." (D.E. 130). Thereafter, at approximately 5:00 p.m. and after repeated phone calls by defense counsel's office, defense counsel received two CDs, and 29 pages of documents, which include affidavits, police reports, some unrelated photographs, and a cover letter from Government counsel. These documents are attached.

Government counsel's letter stated "We intend to introduce these documents at trial." The Government's Notice states:

>   The United States gives notice to defendant Taneshia Lawson and to the Court that it intends to introduce Rule 404(b) **character** evidence. The evidence is as follows: that on or about Saturday, October 21, 2006, Lawson cashed a fraudulent check at a Sneakers store in Auburn, Alabama, which did not belong to her and had been stolen from a woman with the initials J.H. Lawson also was **present during the cashing** of two other fraudulent checks at the same store on Sunday, October 22, 2006.
>   The Government first became aware of this evidence on **Thursday, October 26, 2006**, and has conducted an investigation since that time, which just concluded this afternoon at approximately 12:00 noon.
>   Fed.R.Evid. 404(b) permits the introduction of evidence of other crimes, wrongs or acts if the evidence is admissible to prove intent. Lawson's attorney has indicated on numerous occasions that she intends to present **a defense in which Lawson did not have the intent to steal or the intent to agree to steal the Social Security checks charged in the Indictment.** This evidence will negate such a defense.

(Emphasis added.)

This Notice should be stricken and the Government should be prohibited from introducing the proposed evidence, pursuant to F.R.E. 402, 403, and 404(b). As discussed below, the items described in the Government's Notice are not probative of the matters at issue in this trial, do not relate to any pending charge in this indictment, are irrelevant to the issues in this trial, would be introduced only for their prejudicial impact, and have not been provided with "reasonable notice in advance of trial," as required by F.R.E. 404 (b). Moreover, any probative value of such items would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading of the jury, and would cause unnecessary delay in the trial of this matter. Such items would create the risk that the jurors would reach their decision in this case on an improper basis.

1.    Whether or not Ms. Lawson has personally passed a stolen check on some other occasion does not negate and is not relevant to the defense which Ms. Lawson will present at this trial. The Government continues to misrepresent or misunderstand Ms. Lawson's defense. Ms.

Lawson does not argue that she "did not have the intent to steal or the intent to agree to steal the Social Security checks charged in the Indictment," as argued by the Government (D.E. 130). Rather, Ms. Lawson, as a mentally retarded woman with an I.Q. of 66 or below, does not understand that she can be held criminally liable for checks which she did not steal, pass, or receive proceeds. Ms. Lawson is not capable of the abstract thought process required to intentionally conspire to assist others in their stealing and cashing of checks.

This is a separate issue from Ms. Lawson's own personal liability for cashing one check. Her liability for that one check **is not at issue in this trial**. Ms. Lawson, through counsel, has repeatedly offered to plead guilty to the theft of the single Social Security check which she herself cashed on October 31, 2003. However, that offer has been rejected and that offense is not charged in this Indictment.

2.  The "evidence" proffered by the Government concerns the use of two different individual's stolen personal checks to buy shoes at a Sneakers store in Auburn in October 2006, through the presentation of three different checks – one by a woman and two by a man who the employees believed to be accompanied by a woman. The "evidence" includes **conflicting** accounts of what happened, identification of a woman **other than** Ms. Lawson, description of criminal behavior by a man who is not Ms. Lawson, and description of criminal behavior by "unknown others" who are not Ms. Lawson. The "evidence" is inadmissible hearsay. Such information is not relevant to the present case, which involves three women cashing one person's stolen Social Security checks at a pawn store in Montgomery in October 2003. Moreover, any probative value of such evidence would be outweighed by the substantial danger of unfair prejudice, confusion of the issues, misleading of the jury, undue delay, waste of time, and needless presentation of collateral evidence.

      3.    A.    The documents included with the Government's 404(b) letter include two narrative reports given to the Secret Service (Bates stamp numbers 108, 109). Both of these narratives describe a black male coming in to the Sneakers store on October 21 and 22, and presenting checks. Thus, these narratives do not implicate Ms. Lawson.

      B.    The documents also include photo line-ups of six young African-American women. One of the line-ups (Bates stamp number 106) includes a circle around a picture of a woman who appears to be Ms. Lawson, with the notation "This is the female I saw on Sat 21. She also came in here one Sunday the 22 and stayed in here for about 2 hrs. Then got picked up. I saw **Simone** take her check on Sat the 21." (Emphasis added.) However, a second photo line-up (Bates stamp number 110) with a circled identification **made by Simone,** identifies someone who is **not** Ms. Lawson.

      C.    A third photograph line-up (Bates stamp number 107) included in the documents provided by the Government has a circle drawn around a picture of a woman who appears to be Ms. Lawson, with the notation "I saw this lady in our store on Sunday October 22nd [sic] She entered the store **around the same time frame the transaction took place**. She was in the store for about an hour & a half on Sunday (using our store phone, etc.)" (Emphasis added.) Thus, this witness does not describe any criminal activity by the woman observed.

      D.    The documents also include a suspect description, contained in the police reports made by the store manager concerning the woman who allegedly passed a forged check (Bates stamp numbers 117, 119). The description given is of a woman who is **forty-five years old** and 250 pounds – descriptions which simply don't come close to Ms. Lawson.

      E.    The documents also include two statements by people (J.H. and E.C.) whose

checks were apparently stolen and/or passed without their permission. (Bates stamp numbers 111, 114, 120 - 122). These statements do not describe checks being passed at Sneakers; state that the persons who took or passed the checks are unknown; refer to several other forgeries which are not identified by date or location; and **do not include a single reference** to anyone who could or might be Ms. Lawson. Notably, the driver's license and police report provided by J.H. indicate that she is 42 years old and 280 pounds, similar to the description given by the Sneakers employee. Her photo was not included in the photo line-ups shown to the Sneakers employees.

        F.     The videos are composites and do not represent continuous documentation. Their total lengths vary (one is approximately 17 minutes and the other over 35 minutes); they are of poor quality; they do not include any close-up views; and they do not contain time or date indicators. They are labeled with separate dates. While the videos show several different customers, the same female customers do not appear on each video. Thus, they cannot both show Ms. Lawson. One of the videos does not show any African American woman customer making any payments. To the extent the store employees report a woman in the company of a man who passed bad checks, the videos show minimal interaction between the man who is apparently passing the bad checks and a woman.

        G.     The documents include an affidavit from the store manager (Bates stamp number 105), which states that he was contacted by Joe Tynan, the U.S. Postal Service agent who is the case agent in this case, on October 26, 2006, and on that same date he provided the items and videos to another U.S. Postal Inspector.

        H.     Even a cursory investigation shows that the allegation of forged checks at Sneakers is not as simple as the description given in the Government's Notice. Since receiving the

5

discovery on November 3, defense counsel's office has attempted to reach people referenced in the documents. Defense investigators reached one person: "J.H.," the person whose check was allegedly stolen and passed by a woman at Sneakers. The investigators found that J.H. strongly resembles the woman shown in the October 21, 2006 video, who is shown writing a check and displaying identification for the check. J.H.'s signature strongly resembles the signature on the check allegedly forged at Sneakers. One defense investigator knows one of the women shown on the photo line-up used by the U.S. Postal inspectors and is aware that this woman currently or recently lived in the same neighborhood as J.H.. However, J.H. denied knowing that woman or anyone else in the photo line-up. J.H. also denied knowing when her driver's license was stolen, when she reported it stolen, or that her checks had ever been stolen. She claimed that additional checks were ordered without her knowledge and then sent to some other address. During her meeting with the defense investigators, J.H. called her sister, who then called back and told the investigators that she was advising J.H. not to speak to the investigators, on the advice of her own personal attorney. J.H. then ended the interview.

      4.      The Government's Notice is not timely. The Standing Order on Discovery, included in the Arraignment Order entered in this matter on July 26, 2006 (D.E. 12), required the Government to provide:

> (1) Disclosure by the Government: At arraignment, or on a date otherwise set by the court for good cause shown, the government shall tender to defendant the following . . . (H) Red. R. Evid. 404(b). The government shall advise the defendant of its intention to introduce in its case in chief at trial, pursuant to Rule 404(b) of the Federal Rules of Evidence.

(D.E. 12, pp. 5, 6). In addition, F.R.E. 404(b) requires such disclosure to be given with "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown,

of the general nature of any such evidence it intends to introduce at trial." The Government, by its own description, has been aware of such evidence since October 26, but did not disclose the possible existence, the general nature, or the details of such evidence until eight days later, on the afternoon of November 3, 2006.

"The policy behind the Rule 404(b) notice requirement is 'to reduce surprise and promote early resolution on the issue of admissibility.' Fed.R.Evid. 404(b) advisory committee's note to 1991 amendments." *United States v. Carrasco*, 381 F.3d 1237, 1241 (11th Cir. 2004) (introduction was not harmless and required reversal). There was simply no reason to keep such evidence from the defendant for eight days, leaving defense counsel only two days on a weekend, to attempt to investigate and prepare a response to such information.

Moreover, the notice and time frame given is inadequate to permit reasonable investigation of these other offenses. The documents reference at least seven potential witnesses, yet complete addresses and phone numbers are not provided and defense counsel will be unable, in this short time frame, to locate and interview the seven people in Auburn and Montgomery whose statements are included in the proffered documents.

5.    This evidence does not meet the requirements of Rule 404(b). The Government has characterized this evidence as "Rule 404(b) **character** evidence." (D.E. 130, second sentence, emphasis added)  However, "(e)vidence of other crimes, wrongs, or acts is **not** admissible to prove the **character** of a person in order to show action in conformity therewith." F.R.E. 404(b).

To be admissible under Rule 404(b), the government must demonstrate compliance with all of three requirements: (1) a proper purpose for the admission of the evidence; (2) the act described occurred and the defendant was the actor; and (3) the probative value of the evidence introduction

7

outweighs its prejudicial effect. *United States v. Mills*, 138 F.3d 928, 935 (11th Cir. 1998); *United States v. Jones*, 28 F.3d 1574, 1579 (11th Cir. 1994), mod. on other grounds, 74 F.3d 275 (11th Cir. 1996). In this case, the government cannot meet any one of these requirements.

      A.    The Government's Notice suggests that this evidence is admissible to prove "intent." However, as discussed above, the Government misapprehends what intent is in dispute in this case. The issue is not whether Ms. Lawson intended to pass a stolen check and keep the proceeds. She did so and will not dispute that individual act or the intent to commit that act. However, the charged offenses and the contested issue is whether or not she intended to conspire with three other people and to assist them in stealing and passing three other stolen checks. The proffered evidence simply does not address that question.

Where other crimes evidence is offered to prove "intent," the extrinsic offense must require the same intent as the charged offense. *United States v. Pessefall*, 27 F.3d 511, 516 (11th Cir. 1994) (both extrinsic and charged offense involved protecting illicit drug activity); compare *United States v. Jones*, 28 F.3d 1574, 1580 - 1581 (11th Cir. 1994), mod. on other grounds, 74 F.3d 275 (11th Cir. 1996) ("To be admissible under Rule 404(b), Jones's 1987 and February 1991 gambling crimes must demonstrate a *modus operandi*, or signature trait, similar to that demonstrated by the July 1991 gambling crime committed by the occupant of the apartment involved in this case."); *United States v. Hill*, 953 F.2d 452, 456 (9th Cir. 1991).

In this case, the proposed extrinsic offense (which the Government describes as showing "intent to steal" (D.E. 130, p. 1, next to last line) involves different acts (purchase of shoes with two different stolen personal checks, versus cashing one person's stolen Social Security checks) and different participants (a man, versus the female codefendants) and requires a different intent (theft

for personal gain, versus conspiracy for others' gain) from the charged offenses of conspiracy and aiding and abetting.

        B.     As described above, the evidence proffered by the Government is in conflict and does not establish that Ms. Lawson is the actor suspected of passing a stolen check. See *United States v. Veltmann*, 6 F.3d 1483, 1499 (11th Cir. 1993) (no proof defendants were responsible for other crime) and *United States v. Utter*, 97 F.3d 509, 514 (11th Cir. 1996) (same). As discussed above, the documents included with the Government's Notice describe one man and at least two women, other than Ms. Lawson, as the perpetrator of the collateral offense. Any attempt to introduce this information must include opportunity for full investigation and presentation of these contrary identifications. Significantly, the Government's discovery makes clear that evidence related to this collateral offense will involve a larger number of witnesses than proof relating to this Indictment.

        C.     The probable prejudicial impact of such evidence is measured in part by the strength of the Government's case on the offenses charged in the Indictment. *United States v. Jones*, 28 F.3d 1574 (11th Cir. 1994), mod. on other grounds, 74 F.3d 275 (11th Cir. 1996). In the present case, Ms. Lawson will be shown on videotape being present when the stolen Social Security checks are passed. The government will likely introduce her statement, admitting her knowledge of the checks. The government has indicated that it intends to call her three codefendants, each of whom has pled guilty, to testify to Ms. Lawson's alleged role and knowledge of the conspiracy.

In *United States v. Jones*, 28 F.3d 1574, 1581 (11th Cir. 1994), mod. on other grounds, 74 F.3d 275 (11th Cir. 1996), the Eleventh Circuit described the "balancing test" of the third requirement as being weighted <u>against</u> admission of 404(b) evidence where the government has an otherwise strong case: "In applying this prong, we are mindful that 'prior crime evidence has significant

potential for prejudicial effect, and therefore should not be employed unless really necessary. . . .' If the government has a strong case without the extrinsic offense, then the prejudice to the defendant will more likely outweigh the marginal probative value. . . . 'In other words, if the government can do without such evidence, fairness dictates that it should; but if the evidence is essential to obtain a conviction, it may come in. This may seem like a 'heads I win; tails you lose' proposition, but it is presently the law.'" (citations omitted). Thus, where, as here, the government's direct evidence is strong, the other crimes evidence should not be admitted.

      6.      This Court has the authority to exclude evidence *in limine*. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). A motion *in limine* to exclude evidence may also be granted if the evidence sought to be excluded is clearly inadmissible for any purpose. *Plair v. E.J. Brach & Sons, Inc.*, 864 F. Supp. 67, 69 (N.D. Ill. 1994).

      WHEREFORE, Defendant respectfully requests that the Motion be granted.

      Respectfully submitted,

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Taneshia M. Lawson
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:   (334) 834-2099
FAX:   (334) 834-0353
E-Mail: Christine_Freeman@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Christopher Snyder, Assistant United States Attorney, One Court Square, Suite 201, Montgomery, Alabama 36104.

        **s/Christine A. Freeman**
        **CHRISTINE A. FREEMAN**
        **TN BAR NO.: 11892**
        Attorney for Taneshia M. Lawson
        Federal Defenders
        Middle District of Alabama
        201 Monroe Street, Suite 407
        Montgomery, AL 36104
        TEL:  (334) 834-2099
        FAX:  (334) 834-0353
        E-Mail: Christine_Freeman@fd.org